2013 OK CIV APP 40

HSRE–PEP I, LLC, a Delaware limited liability company, substituted as Plaintiff for First United Bank and Trust Co., an Oklahoma banking association, Plaintiff/Appellee,

v.

HSRE–PEP CRIMSON PARK LLC, a Delaware limited liability company, substitute as Defendant for First United Property Holding Company, LLC, Series B, a series of First United Property Holding, LLC, an Oklahoma limited liability company; Benefit Bank, Frisco Branch; Airtime Inc., an Oklahoma corporation; Mitchell Gee, an individual; Saundra Deselms, Treasurer for Cleveland County, Oklahoma; and the Board Of County Commissioners of Cleveland County, Oklahoma, Defendants,

and

Benefit Bank, Plaintiff/Appellant,

v.

Aduddell Development Group, LLC; ODG–OU, LLC; First United Bank & Trust Co.; First United Property Holding Company, LLC, Series B, a series of First United Property Holding Company, LLC; Mitchell Gee d/b/a Airtime, Inc.; Gary D. Brooks; Kenny W. Thomas; David W. Aduddell; and J. Glenn Rankin, Defendants.

Nos. 109,777, 110,288.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 8, 2013.

Rob F. Robertson, Gable Gotwals, Oklahoma City, Oklahoma, for Plaintiff/Appellee HSRE–PEP I, LLC.

Lyle R. Nelson, Elias, Books, Brown & Nelson, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant Benefit Bank.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Appellant/Defendant Benefit Bank appeals from the trial court's order granting summary judgment in favor of Appellee/Plaintiff HSRE–PEP I, LLC (HSRE). In this commercial mortgage foreclosure action, the trial court determined HSRE's mortgage lien was superior to Benefit Bank's mortgage lien. After *de novo* review, we hold HSRE's mortgage has first priority. Therefore, HSRE is entitled to judgment as a matter of law, and the trial court's order is AFFIRMED.

¶ 2 On February 4, 2008, First United Bank and Trust Company (First United) loaned ODG–OU $25,768,000.00 for an apartment complex in Norman, Oklahoma. The loan was secured by a first mortgage. On June 8, 2008, ODG–OU borrowed $1,350,000.00 from Benefit Bank. Benefit Bank's loan was secured by a second mortgage in the apartment complex. ODG–OU defaulted on the First United loan. First United and ODG–OU entered into a settlement agreement June 3, 2010. The settlement agreement provided that First United or its designee would accept a special warranty deed to the apartment complex as full and complete settlement for payment of the note, thereby releasing ODG–OU from any and all *in personam* liability, and that First United would not pursue any *in personam* liability against ODG–OU in the event of a future foreclosure action.

¶ 3 Under the terms of the settlement agreement, ODG–OU was to concurrently execute and deliver a "Special Warranty Deed conveying fee simple title to the [apartment complex] to [First United] or its designee (the 'Special Warranty Deed'), *subject to those matters listed on Exhibit 'A'* attached

hereto and made a part hereof (the 'Permitted Title Exceptions')." The "Permitted Title Exceptions" listed in Exhibit A included, *inter alia,* Benefit Bank's mortgage, a financing statement made by ODG–OU to Benefit Bank, a mechanic's lien, a right-of-way agreement, and an agreement for a cross-access driveway easement. The issue on appeal surrounds the language "subject to those matters listed on Exhibit A" in the settlement agreement between ODG–OU and First United. First United designated First United Property Holding Company, LLC, Series B (FUPHC–B) to receive the Special Warranty Deed from ODG–OU. The Special Warranty Deed conveying title to the apartment complex to FUPHC–B, subject to easements, restrictive covenants, rights-of-way of record, zoning ordinances, First United's mortgage, and a financing statement made by ODG–OU to FUPHC–B, was delivered to FUPHC–B. At that point, First United held the note and mortgage and FUPHC–B owned the apartment complex.

¶ 4 First United filed a petition to foreclose against FUPHC–B a few weeks later. Benefit Bank filed a foreclosure action against FUPHC–B the same day. The cases were consolidated by the trial court.[1] On August 6, 2010, First United sold the note and mortgage to HSRE. FUPHC–B conveyed the property to HSRE–PEP Crimson Park LLC (Crimson Park) through a special warranty deed the same day. On November 3, 2010, the trial court filed an order substituting parties HSRE for First United and Crimson Park for FUPHC–B. HSRE is currently the holder of the note and mortgage, and Crimson Park owns the apartment complex.

¶ 5 HSRE and Benefit Bank both filed motions for partial summary judgment, each asserting its mortgage had first priority. HSRE asserts that it is undisputed its loan is secured by a first mortgage in the apartment complex. HSRE argues First United did not lose first priority when ODG–OU conveyed title to the apartment complex to First United's designee, FUPHC–B. HSRE claims that under the terms of the settlement agreement, ODG–OU was released from *in per-*

---

1. Case No. CJ–2010–1220 and Case No. CJ–2010–1221 were consolidated. The trial court

order in Case No. CJ–2010–1220 is being appealed.

*sonam* liability, but First United retained its *in rem* claim against the property. HSRE argues the language "subject to those matters listed on Exhibit A" recognized other liens against the property but did not subordinate the first mortgage.

¶ 6 Benefit Bank argues that because First United's designee FUPHC–B received a deed in lieu of foreclosure "subject to" its junior lien, First United waived its right to foreclose. Benefit Bank relies on comment b and illustration 6 of the Restatement (Third) of Property § 8.5 Mortgages (1997) to support its argument that First United waived its right to foreclose by accepting the deed in lieu of foreclosure.[2] Comment b provides, in pertinent part, that "[t]he mortgagee-grantee will also be deemed to have waived the right to foreclose when it accepts title to the mortgaged real estate with actual knowledge of the junior lien." *Id.* cmt. b, illus. 6. Illustration 6 describes the situation where Mortgagor borrows money from Mortgagee–1 and gives Mortgagee–1 a promissory note secured by a mortgage on Blackacre. The mortgage is immediately recorded. Mortgagor then borrows money from Mortgagee–2 and gives Mortgagee–2 a promissory note secured by a mortgage on Blackacre. The latter mortgage is immediately recorded. Mortgagor defaults on the obligation secured by Mortgagee–1's mortgage. As part of an agreement between Mortgagor and Mortgagee–1, Mortgagor agrees to deliver to Mortgagee–1 a deed to Blackacre, in return for which Mortgagee–1 releases Mortgagor from liability for the balance on the mortgage obligation. Pursuant to the agreement, a deed to Blackacre is delivered to Mortgagee–1. Prior to Mortgagor's conveyance to Mortgagee–1, the latter has actual knowledge of the existence of Mortgagee–2's mortgage. Mortgagee–1's mortgage is ineffective against Mortgagee–2, and Mortgagee–1 will not be permitted to foreclose it to eliminate Mortgagee–2's lien. Benefit Bank also relies on the Reporter's Note that "[e]ach time a deed in lieu transaction is negotiated with the understanding that the mortgagee will acquire title subject to junior liens, the senior mortgagee has waived its right to eliminate

those liens." *Id.* (quoting Ann M. Burkhart, *Freeing Mortgages of Merger*, 40 Vand. L. Rev. 238, 348–349 (1987)). Benefit Bank suggests that because First United had knowledge of Benefit Bank's junior lien, First United should have initiated foreclosure proceedings rather than accept a deed in lieu of foreclosure.

¶ 7 The trial court determined it was not the intent of the parties to the settlement agreement to subordinate First United's first mortgage to Benefit Bank's second mortgage. The trial court entered summary judgment in favor of HSRE. Benefit Bank appeals.

██ ¶ 8 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 42 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045. Where the facts are not disputed, an appeal presents only a question of law. *Jones v. Purcell Investments, LLC*, 2010 OK CIV APP 15, ¶ 2, 231 P.3d 706, 708. The parties agree on the facts material to this dispute; however, the parties do not agree on the meaning of the language "subject to those matters listed on Exhibit A" in the settlement agreement between ODG–OU and First United. The meaning assigned by the trial court to a contract is a question of law. *May v. Mid–Century Ins. Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140. Questions of law are reviewed *de novo. Id.*

¶ 9 Benefit Bank argues fee simple title "subject to" Benefit Bank's mortgage means fee simple title "subordinate to" Benefit Bank's mortgage. HSRE argues "subject to" merely recognizes that there are other liens against the property. According to the Oklahoma Statutes and the Supreme Court of Oklahoma:

> The intent of the parties at the time of the contract's formation, as expressed within the four corners of the document, controls the meaning of the written contract. In-

---

**2.** The Restatement (Third) of Property § 8.5 Mortgages provides: "The doctrine of merger

does not apply to mortgages or affect the enforceability of a mortgage obligation."

tent must be discerned from the entire instrument taken as a whole. Where a contract is complete in itself and, as viewed in its entirety, contains clear and explicit language leaving it free of ambiguity, its language is the only legitimate evidence of what the parties intended.

*Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Service, Inc.*, 2009 OK 77, ¶ 35, 224 P.3d 685, 698–699 (footnotes omitted); *see* 15 O.S. §§ 151–178. We note that Benefit Bank was not a party to the settlement agreement. First United and ODG–OU were the parties to the settlement agreement. The intent of First United and ODG–OU at the time of the contract's formation, as expressed in the four corners of the document, controls the meaning of the settlement agreement. The settlement agreement contains clear and explicit language free of ambiguity. Therefore, the language in the settlement agreement is the only legitimate evidence of what the parties intended.

¶ 10 Based on our reading of the four corners of the settlement agreement, the language "subject to those matters listed on Exhibit A" merely recognizes the existence of liens against the property, including Benefit Bank's mortgage. This language does not subordinate First United's first mortgage. First United did not waive its right to foreclose the interests of third parties. Waiver is the voluntary and intentional relinquishment of a known right. *Barringer v. Baptist Healthcare of Oklahoma*, 2001 OK 29, ¶ 22, 22 P.3d 695, 700–701 (citing *Faulkenberry v. Kansas City Southern Ry. Co.*, 1979 OK 142, 602 P.2d 203, 206–207). The doctrine is essentially a matter of intention, focusing on the intent of the party against whom waiver is asserted. *Barringer*, 2001 OK 29, ¶ 22, 22 P.3d at 701 (citing *Archer v. Wedderien*, 1968 OK 186, 446 P.2d 43; *State ex rel. Gaines v. Beaver*, 1945 OK 318, 196 Okla. 560, 166 P.2d 776). The settlement agreement contemplates the mortgagee bringing a foreclosure action in the future:

1.01.2 *Release and Covenant Not to Sue.* Mortgagee hereby remises, releases and forever discharges Mortgagor and Guarantors ... of and from any and all claims, causes of action, suits, controversies, torts and demands whatsoever involving in personam liability Mortgagee heretofore had or now has by reason of the Note, the Security Documents, and the Guarantees or otherwise arising in connection with the Project ... or the loan transaction evidenced by the Security Documents. *Mortgagee agrees that upon any subsequent determination that it is necessary, advisable or appropriate to institute a foreclosure action in order to foreclose the interest of any third party, Mortgagee shall not seek an in personam judgment or deficiency judgment against Mortgagor or Guarantors.* It is expressly understood and agreed between the parties hereto that *any such legal proceeding shall be in rem only* and with respect to the Project and the other real and personal property securing payment of the Note, subject to the provisions of Article VII hereof.

First United did not intentionally relinquish its right to foreclose the interests of third parties. As a result, First United's first mortgage was not subordinated to Benefit Bank's second mortgage.

¶ 11 AFFIRMED.

JOPLIN, C.J., and BELL, J., concur.